IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Joseph D. Dantzler, Jr., Plaintiff, | ) | C/A No. 3:15-5100-JMC-PJG |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Time Warner Cable; Sedgwick Claims Management Services, Defendants. | ) | |

The defendants removed this civil action, which was originally filed in the Lexington County Court of Common Pleas by Joseph D. Dantzler, Jr., a self-represented plaintiff. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.) for a Report and Recommendation on Dantzler's Motion to Remand, (ECF No. 16), Dantzler's Motion for Default Judgment, (ECF No. 17), and the defendants' Motion to Dismiss the Amended Complaint, (ECF No. 37). The defendants filed a response to Dantzler's Motion to Remand, (ECF No. 22), and Motion for Default Judgment, (ECF No. 21). Further, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), the court advised Dantzler of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion to dismiss, (ECF No. 24), and Dantzler filed a response in opposition to the defendants' motion. (ECF No. 42.) Having reviewed the parties' submissions and the applicable law, the court recommends that Dantzler's Motion to Remand and Motion for Default Judgment be denied and the defendants' Motion to Dismiss the Amended Complaint be granted.



PJG

**BACKGROUND**

Dantzler originally filed his Complaint in the Lexington County, South Carolina, Court of Common Pleas. (ECF No. 1-1 at 2.) The Complaint asserted causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress. (Id. at 5.) The Complaint also alleged that the defendants were reckless in violating the South Carolina Unfair Trade Practices Act, see S.C. Code Ann. § 39-5-20, and § 38-57-30, which prohibits unfair methods of competition and deceptive acts and practices in the insurance industry. (Id. at 6.) Later filings revealed Dantzler's claims were the result of his claim for disability benefits from his employer, Defendant Time Warner Cable ("Time Warner"), and his employer's disability insurance plan administrator, Defendant Sedgwick Claims Management Services ("Sedgwick"). (ECF No. 33 at 1-2.) Dantzler sought $415,000 in damages against the defendants, plus treble damages under the South Carolina Unfair Trade Practices Act and punitive damages. (Id. at 7.)

The defendants removed Dantzler's action to this court. (ECF No. 1.) The defendants claimed they were entitled to remove the action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 based on the parties' diversity of citizenship and the alleged amount in controversy exceeding $75,000. (Id. at 2.) The defendants also claimed they were entitled to remove the action because Dantzler's claim arose out of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), and therefore, this case presented a federal question. (Id. at 2-3.) Specifically, the defendants claimed Dantzler's allegations "relate to" Dantzler's employee benefit plan with Defendant Time Warner, which was governed by ERISA. (Id.)

Dantzler filed a Motion to Remand, (ECF No. 16), arguing that he only raised state law claims in his Complaint, and ERISA was not applicable because the claims were not related to the





payment or denial of his benefits. (Id.) Dantzler also filed a Motion for Default Judgment, arguing the defendants failed to timely respond to the Complaint. (ECF No. 17.)

Dantzler filed an Amended Complaint on February 8, 2016. (ECF No. 33.) The Amended Complaint included just one cause of action—intentional infliction of emotional distress. (Id. at 5.) The defendants moved to dismiss the Amended Complaint,[1] arguing Dantzler failed to state a claim upon which relief can be granted as to the cause of action for intentional infliction of emotional distress, and further arguing that Dantzler waived the other causes of action he listed in his original complaint because they were not included in the Amended Complaint. (ECF No. 37 at 1.)

**A. Motion to Remand**

A removing party has the burden to establish the existence of federal jurisdiction. Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). The removal statute, 28 U.S.C. § 1441, must be strictly construed and doubts must be resolved in favor of remand. See Palisades Collections LLC v. Shorts, 552 F.3d 327, 333-34, 336 (4th Cir. 2008). Only actions that could have been originally filed in federal court may be removed from state court. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The plaintiff is the master of the complaint and may avoid federal jurisdiction by exclusively relying upon state law. Id.

For federal question jurisdiction to lie pursuant to 28 U.S.C. § 1331, a right or immunity created by the Constitution or the laws of the United States must be an essential element of the plaintiff's claim. Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936). It is well settled that the

[1] The defendants had previously filed a Motion to Dismiss the original complaint. (ECF No. 23.)





determination of federal question jurisdiction is governed by the "well-pleaded complaint rule," which requires for the exercise of federal jurisdiction based upon § 1331 that a federal question be presented on the face of the plaintiff's well-pleaded complaint. Harless v. CSX Hotels, Inc., 389 F.3d 444, 451 (4th Cir. 2004) (citing Aetna Health Inc. v. Davila, 542 U.S. 200 (2004)); see also King v. Marriott Int'l, Inc., 337 F.3d 421 (4th Cir. 2003).

On the other hand, the diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of citizenship of the parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00):

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
>
> (1) citizens of different States[.]

28 U.S.C. § 1332. Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 372-74 & nn.13-16 (1978). As to corporate parties, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); see also Hoschar v. Appalachian Power Co., 739 F.3d 163, 170 (4th Cir. 2014).

Dantzler moves to remand this action, arguing the court lacks federal question jurisdiction. Specifically, Dantzler argues his allegations only raise matters of state law, and ERISA does not preempt his claims. However, Dantzler's Motion to Remand does not address whether the court has diversity jurisdiction, which was one of the bases upon which the defendants removed the case from state court.





The court finds that even if the court lacked federal question jurisdiction, remand would not be appropriate because the court has diversity jurisdiction over this case. As to the amount in controversy, Dantzler's Complaint prays for a judgment of $415,000, which is well in excess of the $75,000 threshold under § 1332. (ECF No. 1-1 at 7.) As to the citizenship of the partes, Dantzler indicates he is a citizen and resident of South Carolina; whereas the defendants claim Time Warner is a corporation incorporated in Delaware with its principal place of business in New York, and Sedgwick is a corporation incorporated in Illinois with its principal place of business in Tennessee. (ECF No. 1 at 2.) Therefore, the parties in this case are diverse because Dantzler's citizenship is different from the citizenship of the defendants. Consequently, the court finds it has jurisdiction over this action pursuant to § 1332(a).

**B. Motion for Default Judgment**

Federal Rule of Civil Procedure 55(a) clearly states that the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court notes that, as a general matter, the law disfavors default judgments. Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dep't of Labor, 895 F.2d 949, 950 (4th Cir. 1990).

Dantzler argues the defendants failed to respond to the Complaint within thirty days. (ECF No. 17 at 1.) He claims the deadline for the defendants to respond was January 7, 2016, but he did not receive "anything in the mail" until January 11, 2016. (Id.)

The court finds the defendants timely removed this action from state court, and therefore, they have not "failed to plead or otherwise defend" this action. Under the removal statute, defendants have thirty days to file the notice of removal after their receipt of a copy of the initial





pleading. 28 U.S.C. § 1446(b). Time Warner and Sedgwick were served with the Complaint on December 4 and December 7 of 2015, respectively. (ECF No. 17-1 at 5 & 7.) The defendants filed the notice of removal on December 31, 2015. (ECF No. 1). The court notes that under § 1446, the date on which the plaintiff receives notice that the action was removed to federal court is irrelevant to calculating the timeliness of the removal. Moreover, since the action was removed, the defendants have actively defended the case by responding to Dantzler's motions and moving to dismiss the case. (ECF Nos. 21-23, 37). Therefore, Dantzler cannot show that defendants have "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Accordingly, Dantzler's motion for default judgment should be denied.

**C. Motion to Dismiss**

**1. Generally**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).





The court observes that it is required to liberally construe *pro se* complaints. Id. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Twombly, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**2. Intentional Infliction of Emotional Distress**

Defendants argue the Amended Complaint should be dismissed because Dantzler's sole claim—intentional infliction of emotional distress—is preempted by ERISA.[2] The provisions of ERISA supersede any and all state law insofar as they "relate to" any employee benefit plan covered

[2] The only cause of action stated in Dantzler's Amended Complaint is a claim for intentional infliction of emotional distress. (ECF No. 33.) Dantzler's original complaint arguably included causes of action for negligent infliction of emotional distress and violations of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-20) and a similar unfair trade practice statute relating to insurance (S.C. Code Ann. § 38-57-30), though these claims were not clearly listed as causes of action upon which he seeks relief. The Amended Complaint contains no mention of these claims, and consequently, if Dantzler intended to raise the in his original complaint, they were waived when he filed the Amended Complaint. See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001).





by ERISA. 29 U.S.C. § 1144(a); see also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983) (stating that the "relate to" language in 1441(a) is to be read in its broadest sense and requires any state law that "has a connection with or reference to" an ERISA-covered plan be preempted). Moreover, § 1144(a)'s scope is not limited to state laws that are specifically designed to affect employee benefit plans. Powell v. Chesapeake and Potomac Tel. Co. of Va., 780 F.2d 419, 421 (4th Cir. 1985) (citing Shaw, 463 U.S. at 98)). Accordingly, "state common-law tort and contract actions which are 'based on alleged improper processing of a claim for benefits under an employee benefit plan' are preempted by ERISA." Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1481 (4th Cir. 1996) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987)).

In his Amended Complaint, Dantzler alleges the following. Prior to June 16, 2015, Dantzler was a retention representative at Time Warner. (ECF No. 33 at 2.) Dantzler purchased a policy for disability benefits through Time Warner, who contracted with Sedgwick to make all claims decisions. (Id.)

The Amended Complaint further alleges that Dantzler suffers from severe anxiety and panic attacks, and on June 16, 2015, these conditions worsened to the point that he had to stop working. (Id.) Also on June 16, Dantzler made a claim for benefits under the disability policy by submitting to Sedgwick a medical form provided by a Time Warner Cable Employee Assistance Program counselor. (Id.) On July 20, 2015, Sedgwick denied Dantzler's claim for benefits because the medical documentation he submitted did not support a finding that he was disabled. (Id. at 3.) On July 23, 2015, Dantzler requested a "first-level" appeal of Sedgwick's denial of his claim, and on September 11, 2015, Sedgwick approved his claim for short-term disability benefits. (Id.) Sometime thereafter, Sedgwick approved total disability benefits for Dantzler. (Id.)



PJG

Dantzler alleges in his Amended Complaint that during the claims process, the defendants falsely alleged that Dantzler was lying and exaggerating about this disability, challenged Dantzler's claim in the face of overwhelming medical evidence, required him to see different physicians and counselors, and required him to use different medications that had bad side effects. (Id. at 4.) He contends the defendants' conduct was an attempt to force Dantzler to abandon his disability claim and return to work, made with the knowledge that Dantzler's was particularly vulnerable to emotional distress, and was intentional or done with reckless disregard to Dantzler's vulnerability. (Id. at 5.) Because of this conduct, Dantzler allegedly suffered "extreme mental and emotional distress" that included "fear, anxiety, stress, frustration, anger, [] feelings of hopelessness, [. . .] difficulty concentrating, intrusive thoughts, and diminutions to interest in life and living." (Id. at 4.)

The court finds that Dantzler's intentional infliction of emotional distress claim relates to his ERISA-covered plan because the claim can only be resolved by assessing the propriety of Sedgwick's denial of Dantzler's benefit claim.[3] In other words, if the court were to consider the merits of Dantzler's intentional infliction of emotional distress claim, the court would have to determine the rights of the parties under the disability plan to evaluate whether the defendants' conduct met the elements of the tort claim. See Stiltner, 74 F.3d at 1481 (finding that the plaintiff's state law claim for intentional infliction of emotional distress against his insurer for failure to pay

[3] In South Carolina, for a plaintiff to recover for the intentional infliction of emotional distress, he must show that (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Upchurch v. New York Times Co., 431 S.E.2d 558, 561 (S.C. 1993) (citing Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)).





his disability benefits was preempted by ERISA because the claim could not be resolved without reference to the disability plan).[4] Accordingly, the court finds Dantzler's claim should be dismissed because it is preempted by ERISA.[5]

In light of Dantzler's *pro se* status, the court will allow him twenty-one (21) days from the date of this Report and Recommendation to file responses to the court's standard Specialized Interrogatories used in ERISA cases (attached to the Report and Recommendation), if he elects to pursue such a claim. To comply with footnote 1 of those interrogatories, Plaintiff must submit a motion to amend the Complaint properly supported by a proposed Amended Complaint asserting a claim under ERISA on or before **May 5, 2016**. Defendants shall respond to the Specialized Interrogatories within twenty-one days after receiving Plaintiff's responses, if any.

---

[4] The Stiltner court further noted, "Applying [the Shaw] analysis, the lower federal courts uniformly have held that state-law claims of intentional infliction of emotional distress which are based on the allegedly wrongful denial or termination of benefits under an ERISA plan are preempted by ERISA." Stiltner, 74 F.3d at 1480-81 (citing Lopez v. Commonwealth Oil Refining Co., 833 F. Supp. 86, 89-90 (D.P.R. 1993); Lennon v. Walsh, 798 F. Supp. 845, 849 (D. Mass. 1992); Thomas v. Telemecanique, Inc., 768 F. Supp. 503, 506 (D. Md. 1991); Parisi v. Trustees of Hampshire College, 711 F. Supp. 57, 60-62 (D. Mass. 1989)).

[5] The court also finds that even if Dantzler's intentional infliction of emotional distress claim were not preempted, the Amended Complaint fails to state a claim upon which relief can be granted because Dantzler failed to plead facts that, taken as true, plausibly show the defendants' conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community." See Upchurch, 431 S.E.2d at 561. By Dantzler's own allegations, his claim was only denied initially because he did not provide sufficient medical documentation to show that he was disabled. However, after using a physician approved by the defendants, Dantzler's disability claim was approved for short-term benefits, and later, he was approved for total disability benefits. Other than his bare and conclusory assertions, Dantzler failed to plead facts that would plausibly show the defendants initially denied his claim to force him to drop his claim or return to work, or for any other ill motive. Dantzler's pleading is devoid of any specific allegations of actions or conduct by the defendants that would demonstrate their denial of his claims was in bad faith.





**RECOMMENDATION**

Based on the foregoing, the court recommends that Dantzler's Motion to Remand and Motion for Default Judgment be denied. (ECF Nos. 16 &17.) Also, the court recommends the defendants' Motion to Dismiss the Amended Complaint be granted (ECF No. 37), unless Dantzler takes the action described above.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 14, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).